Cahill v. Lauf.

## Michael J. Cahill et al. v. John M. Lauf.

### Gen. No. 13,105.

1. MORTGAGE SECURITIES—*character of title conveyed by assignment.* The owner of mortgage securities, as such, can convey no better title than that which he himself can enforce.

2. FORECLOSURE—*what establishes prima facie case.* The presentation of notes and trust deed makes a *prima facie* case, justifying a decree of foreclosure.

3. SET-OFF—*character of evidence essential to establish, as defense to foreclosure proceeding.* Evidence of a set-off in an action of foreclosure must be direct and definite in character.

4. MASTER IN CHANCERY—*when finding of, will not be disturbed.* The findings of a master approved by the chancellor will not be disturbed on review unless plainly and clearly against the evidence.

Foreclosure. Error to the Circuit Court of Cook County; the Hon. HENRY B. WILLIS, Judge, presiding. Heard in this court at the October term, 1906. Affirmed. Opinion filed May 13, 1907.

**Statement by the Court.** The defendant in error, John M. Lauf, as complainant, March 23, 1904, filed his bill in the Circuit Court to foreclose a trust deed in the nature of a mortgage, signed by Michael J. Cahill, one of the plaintiffs

in error, under date of October 26, 1898, conveying certain lots in Hawhe's Subdivision in section 22, township 38, in Cook county, to secure a principal promissory note for $1,300, executed by said Cahill, payable to the order of himself three years after date, with interest at 6 per cent, payable semi-annually, and by said Cahill indorsed. Of this principal note and certain unpaid interest coupons evidencing the interest thereon, the bill alleged the complainant to be holder and owner.

After issues were joined the cause was referred to Thomas J. Holmes, master in chancery, to take proofs and report his conclusions thereon. After the master's report was made and filed, however, the court referred the cause back to said master to take further proofs therein. Pending the hearing before him, said Holmes ceased to be master, and was appointed a special commissioner in this cause to finish the taking of proofs and report the same, with his conclusions, to the court. The commissioner reported in favor of the complainant, finding that there was due to him upon said notes and trust deed $1,630.45, and the further sum of $150 for a solicitor's fee, and recommended that a decree of foreclosure be entered in accordance with said findings. He stated the defendant's contentions and his conclusions thereon, as follows:

"It appears from the testimony that the complainant Lauf purchased said trust deed and notes from one Herbert Hammond in 1901. At the time the papers were made they were delivered to James B. Ryan, and through Herbert Hammond became the property of complainant. The consideration for the making of the notes and trust deed was the cancelling of a claim for interest and other bills then due from Mr. Cahill to said Ryan. It is claimed on behalf of the defendant Cahill that after the loan in question was made, Cahill secured another loan from Ryan and gave another trust deed and notes on other real estate to secure the same, but that Cahill did not receive from Ryan the full amount called for by that trust deed and notes, and that therefore Cahill should be allowed a credit for said defi-

Cahill v. Lauf.

ciency on the note and trust deed now in foreclosure. It is also claimed on behalf of the defendant Cahill that he should in this account be allowed a bill for advertising of the complainant Lauf and his daughter in two certain publications of the defendant Cahill. It is also claimed that the amount allowed to complainant as his solicitor's fees is excessive. But I find that the proof in support of the above contentions on the part of the defendant is not of that direct, positive, and preponderating kind which I deem necessary to support such contentions in this case."

A decree was entered in conformity with the recommendation of the special commissioner, and to reverse this decree a writ of error was sued out of this court.

By his assignments of error and his argument under them in this court, the plaintiff in error makes the contentions set forth in the commissioner's report.

DICKINSON & HAREMSKI, for plaintiffs in error.

LONGENECKER & LONGENECKER, for defendant in error.

MR. PRESIDING JUSTICE BROWN delivered the opinion of the court.

There seems to us a misapprehension of the true questions at issue in this cause in the argument of counsel for defendant in error. They speak in their argument of occupying the position of "purchasers in good faith and without notice of commercial paper that was for sale." This may be a truthful claim so far as the notes and any personal remedy on them is concerned, but since the decision of Olds v. Cummings, 31 Ill., 188, it has been the declared law of Illinois that there was no such thing as negotiability in the technical and "law merchant" sense in mortgage securities as such. They are assignable as incidents to the debts evidenced by the notes which they secure, but they are not negotiable so as to cut off defenses to enforcement by foreclosure which existed against the original taker. In other words, they have not that attribute of negotiability in the

commercial sense through which a man may, under some conditions, convey a better title to them than he himself could enforce.

Numerous other cases in the Supreme Court and in this court, following Olds v. Cummings, *supra,* establish this doctrine beyond question. Miller v. Larned, 103 Ill., 562; Chicago Title & Trust Co. v. Aff, 183 Ill., 91; Romberg v. McCormick, 194 Ill., 205; Bebber v. Moreland, 100 Ill. App., 198, are examples.

In the case at bar, although the mortgage security was in the form of a trust deed, and although the notes which it secured were made payable to the order of the maker, Michael J. Cahill, and by him indorsed in blank, this rule would prevail. That is, if before the first and original taker, James B. Ryan, parted with the security there had accrued to Michael J. Cahill a defense valid against said Ryan as to its foreclosure, then, although Hammond and Lauf, the successive subsequent purchasers of it, might be innocent purchasers, and although Cahill might be personally liable on his notes to them, and on them a personal judgment might be procured against him by Lauf, yet a decree in foreclosure which could not be rendered in favor of Ryan, could not be so rendered in favor of Lauf.

If, therefore, the decree depended on the position chiefly insisted on by the defendant in error, we should be obliged to reverse it. We do not, however, think it was so placed by the court below. It certainly was not recommended by the master on that ground. The reason which he gives is that the defense of partial payment, failure of consideration, or set-off put forward by the defendant, was not sustained by that "direct, positive and preponderating kind" of evidence which he "deemed necessary." Of course the defense or defenses, except as to the excessiveness of the solicitor's fees, were of a nature which placed the burden of proving them on the defendant. The presentation of notes and trust deed made a *prima facie* case for the decree which was entered, which it was for the defendant to overcome.

It has been necessary for us, therefore, to examine the

record carefully to see if the master's judgment adverse to the sufficiency of the evidence to sustain the defendant's case, is, in our opinion, borne out.

We think that it is impossible to read the testimony in the record as it was taken without being impressed with the truth of the master's statement that the evidence of the defendant on which a set-off against Ryan before he sold the note is sought to be predicated, is lacking in directness and definiteness. Without detailing it, we cannot show this with explicitness. It is to be noted that no date except the year 1899 was given for the incident which was thus described by Mr. Cahill under the examination of his counsel.

· "Q. During the time that Mr. Ryan held this trust deed and note, I will ask you whether or not he owed you any money? A. Yes, sir.

Q. How much did he owe you? A. $700.

Q. State what that was for? A. I gave him a mortgage on 70 acres in Palos Park. He gave me sums from time to time, and he gave me $1,300—there was $2,000 coming. I got somebody to take that up and he would not release it, and we had to pay it under protest.

Q. Mr. Ryan agreed to give you $2,000, for which you then gave him a trust deed and note on some property in Palos Park? A. Yes, sir.

Q. He advanced you only $1,300. Yes, sir.

Q. Leaving balance due you of — A. $700.

The Master: When was that? A. In 1899.

The Master: Previous to this? A. No sir, after this note was made."

This is all the evidence on the subject. It certainly would seem as though such a set-off should be proved with detail and precision. Documentary evidence to sustain a part of the story must have been in existence. But what must be particularly noticed is that although Mr. Cahill testified (in answer to his counsel's leading question) that "while Mr. Ryan held the trust deed and note" involved in the present case, he owed him (Cahill) money, Cahill had just before testified that he did not know at what time Mr. Ryan parted with

the possession of these papers and Mr. Hammond became the owner of them. While there is evidence of Mr. Lauf in the case that *he* became possessed of the notes by transfers from Mr. Hammond in 1901 or 1902, and Mr. Cahill says—without giving the means of his knowledge—that it was early in 1901, there is no evidence in the record, although Hammond was a witness and might have been examined on the point, as to when Ryan parted with them to Hammond. Even if Ryan did in 1899 owe $700 to Cahill—of which we consider the proof very scanty and indefinite—it might have been only after he had parted with this note and trust deed in question, which is dated in October, 1898. If it were, it certainly could form no credit in the foreclosure of the trust deed.

We do not think it necessary to advert further to this alleged want of the credit either of the $700, or of the coupon notes disputed.

Nor is there anything to show that the solicitor's fee was excessive. The oral evidence introduced about it supported it.

But it is insisted that there was proved a set-off against Lauf himself of $878.80, for advertisement of his own and his daughter's business in Cahill's papers, the "Catholic Pilot" and the "Home Light," for three years. The burden of proving this set-off to the notes was on Cahill. He failed to sustain it because the contract which he claimed, viz., that he should insert the advertisements and "not charge much," is explicitly denied by Lauf, who says that Cahill expressly asked permission to put the advertisements in for nothing and as a mark of gratitude for leniency. Cahill's failure to present bills for three years, although part of the time at least he was paying interest to Lauf, tends somewhat to corroborate Lauf.

Where the court has confirmed a master's report, the decree must be plainly and clearly against the evidence to justify a reversal. Siegel v. Andrews & Co., 181 Ill., 350–356; Bogue v. Franks, 100 Ill. App., 434.

The decree of the Circuit Court is affirmed.

*Affirmed.*